**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Stefan Bogdanovich (State Bar No. 324525)
1990 North California Blvd., 9th Floor
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          sbogdanovich@bursor.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CABOT and JONATHAN MIRANDA, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| LECTRIC EBIKES LLC, | |
| Defendant. | |

Plaintiffs Michael Cabot and Jonathan Miranda file this class action complaint on behalf of themselves and all others similarly situated (the "Class Members") against Defendant, Lectric eBikes LLC. ("Defendant" or "Lectric").  Plaintiffs bring this action based upon personal knowledge of the facts pertaining to themselves, and on information and belief as to all other matters, by and through the investigation of the undersigned counsel.

<u>**NATURE OF THE ACTION**</u>

1.      The market for electric bicycles ("ebike" or "ebikes") is booming.  The revenue generated in the ebike market in the United States is expected to amount to be $3.45 billion in 2024.  Defendant seeks to carve out its own share of this hypercompetitive market by offering perpetual "sales" and "discounted" prices through its online e-commerce store.

2.      It is no secret that consumers actively seek out bargains and discounted items when making purchasing decisions.  Retailers, including Defendant, understand consumers' susceptibility to such perceived bargains.  Products perceived by consumers to be discounted, however, are not always actual bargains.  In an effort to give off the appearance of a bargain, Defendant intentionally misleads consumers as to the quality and value of the e-bikes and their accessories available on its website (the "Products") through its deceptive sales tactics.

3.      When consumers visit Lectric's online e-commerce store, www.lectricebikes.com, they are shown purported "sale" and "discounted" prices on Defendant's Products, including a variety of their ebike models and bundled accessories.  *See, e.g.*, Figures 1-2, next page.

**Figure 1:**





**Figure 2:**



4.    But Defendant's purported "sales" are, in reality, anything but.  The substantial savings shown to consumers are deceptive and misleading because Defendant's Products are never sold at the full price represented.

5.     For example, in Figure 1, above, Lectric's XPedition Dual Battery Cargo ebike and accessory bundle is shown as being on sale for $1,699, from a discounted price of $2,154.  But online archives documenting Defendant's pricing and sales history show that this same ebike was always on sale for $1,699, with bundled accessories.

6.     Back in March 24, 2024, according to the Internet Archive's *Wayback Machine*, this same ebike was on sale for $1,699, from a discounted price of $2,104.  *See* Figure 3.

**Figure 3:**



7.     The Internet Archive's screenshot of this same webpage on May 22, 2024 shows the ebike again being on sale for $1,699 as part of a "Big Memorial Day Sale!" *See* Figure 4, next page. Consumers needed to act quick, given that the purported sale was only set to last for "05 Days: 17 Hours: 44 Min: 55 Sec."

**Figure 4:**



8.      Memorial Day came and went, but the sales remained. The Internet Archive's screenshot of this same webpage on June 19, 2024 shows the ebike again being on sale for $1,699 as part of a Flash sale set to only last "13 Hours: 35 Min: 44 Sec." *See* Figure 5, next page.

**Figure 5:**



9.      Shoppers that missed this flash sale were in luck, however. The Internet Archive's screenshot of this same webpage on July 24, 2024 shows the ebike stayed on sale for $1,699.

**Figure 6:**



10.    The Internet Archive's next screenshot from August 7, 2024 shows the ebike on sale for $1,699, as part of another flash sale set to last for only "02 Days: 08 Hours: 29 Mins: 18 Sec."

**Figure 7:**



11.    When counsel first started investigating this case in mid-August 2024, they saw that Lectric was advertising this same ebike on sale for $1,699 as part of a Labor Day Sale. Shoppers that subscribed to Lectric's emailing lists would receive periodic reminders of these fleeting sales. On August 28, 2024, Lectric warned shoppers that "Labor Day Deals <u>End Soon</u>!"

**Figure 8:**



12.     On September 5, 2024, Lectric emailed shoppers: "We are down to the last day of our extended Labor Day Sale! Save big before the deals are gone. Sale ends tonight at 11:59 PST!"

**Figure 9:**



13.     Except the sale did not end that night.  Two business days later, on September 9, 2024, Lectric announced to shoppers they would begin an aptly named "***Endless*** Summer Sale!"

**Figure 10:**



14.     If something is always "on sale," it is never truly on sale. Various state and federal laws prohibit false "reference" pricing that misleads consumers into thinking they are getting a bargain, when in fact, they are not.  Even so, Defendant employs inflated, fictitious reference prices for the sole purpose of increasing its sales.  Defendant engages in this deceptive practice to deceive consumers, including Plaintiffs, into believing they are receiving a bargain on their purchases to induce them into making a purchase they otherwise would not have made.

15.     As a direct and proximate result of Defendant's false and misleading sales practices, Plaintiffs and members of the Class, as defined herein, were induced into buying the Products under the false premise that they were of a higher grade, quality, or value than they actually were.

16.     Plaintiffs seek relief individually, and on behalf of all purchasers of the Products for violating the California Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*, fraud, and unjust enrichment.  Through this action, Plaintiffs seek to enjoin Defendant from its false and deceptive sales practices, and Plaintiffs seek to obtain actual and statutory damages, restitution, injunctive relief, and reasonable attorneys' fees costs.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members, and the total amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

18.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial business within California, such that Defendant has significant, continuous, and pervasive contacts with the State of California.  Defendant's misrepresentations about the Products were purposely directed to this District and Plaintiffs viewed and relied upon these representations in this District.  Further, Defendant conducts and transacts business in this District and contracts to supply goods within this District.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant transacts significant business within this District and because Plaintiff Cabot purchased his ebike in this District.

## PARTIES

20.     Plaintiff Michael Cabot is an individual consumer who, at all times material hereto, was a citizen of California and resident of Alamo, California.

21.    Mr. Cabot purchased a "XP Lite 2.0 JW Black" e-bike bundle from Defendant's website on August 25, 2024, for a "sale" price of $899.00, which purported "savings" of $148 in bundled accessories for an "Elite Headlight" and "Bike Lock" as part of the above referenced "Labor Day Sale." *See* Paragraphs 11-13 and Figures 8 through 10, *supra*.  When buying the bundle, Mr. Cabot also reviewed the labels, disclosures, warranties, and marketing materials (including on Defendant's website), and understood them as representation and warranties by Defendant that the ebike was ordinarily offered at a higher price, or that the ebike was ordinarily sold without any free bundled accessories.  For example, when reviewing the bundle Mr. Cabot purchased on Defendant's e-commerce website, it displayed an original, strike-through price of $1,047, representing the same purported $148 "discount."  Before purchasing the bundle, Mr. Cabot reviewed information about the bundle, including Defendant's representations that the bundle was being offered at a discounted "sale" price, including, but not limited to, that the product was "on sale," that the non-sale strikethrough price of the Product was higher than the advertised price, and that he needed to act quickly, because the sale was time-limited in nature.  *Compare* https://web.archive.org/web/20240824034350/https://lectricebikes.com/products/xp-lite-jw-black (showing a screen capture of the ebike listing as it appeared in August 24, 2024, a day before Mr. Cabot's purchase) with https://web.archive.org/web/20240607015717/https://lectricebikes.com/products/xp-lite-jw-black (showing a screen capture of this same listing from June 07, 2024, showing the same $148 bundled savings).

22.    Mr. Cabot relied on Defendant's false, misleading, and deceptive representations and warranties about the bundle in deciding to buy the ebike.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the ebike, or would not have paid as much for the ebike and its bundled accessories, had he known Defendant's representations were not true.  Defendant's representations about its ebike and bundled accessories are false and misleading because they induce consumers into believing that they are purchasing Products of a higher value and quality than they actually are.

1       23.    Had Mr. Cabot known the truth—that the representations he relied upon in making

2  his purchase were false, misleading, and deceptive—he would not have purchased the ebike or

3  would have paid less for the ebike and its bundled accessories. Mr. Cabot did not receive the

4  benefit of his bargain, because Defendant's ebike and bundled accessories were not of the

5  represented quality and value. Mr. Cabot understood that his purchase involved a direct transaction

6  between himself and Defendant, because the Product he purchased came with packaging, labeling,

7  and other materials prepared by Defendant, including representations and warranties regarding the

8  advertised claims.

9       24.    Plaintiff Jonathan Miranda is an individual consumer who, at all times material

10  hereto, was a citizen of California and resident of Anaheim, California.

11       25.    Mr. Miranda purchased a "Xpedition Dual Battery Cargo" e-bike bundle from

12  Defendant's website on March 17, 2024, as part of a "St. Paddy's Day Flash Sale" for a "sale"

13  price of $1,699.00, which purported "savings" of $405 in bundled accessories for an "XPedition

14  Essentials Package," "XPedition Frame Bag," "Orbitor," and "eBike Travel Backpack." *See*

15  https://web.archive.org/web/20240317135530/https://lectricebikes.com/products/xpedition-dual-

16  battery (showing a screen capture of the website as it appeared on the day Mr. Miranda purchased

17  his ebike), reproduced as Figure 11, next page.

**Figure 11:**



26.     When buying the bundle, Mr. Miranda also reviewed the accompanying labels, disclosures, warranties, and marketing materials (including on Defendant's website), and understood them as representation and warranties by Defendant that the ebike was ordinarily offered at a higher price, or that the ebike was ordinarily sold without any free bundled accessories. For example, when reviewing the bundle Mr. Miranda purchased on Defendant's e-commerce website, it displayed an original, strike-through price of $2,104, representing the same purported $405 "discount."

**Figure 12:**

27.     Mr. Miranda also relied on Defendant's representation that he was "in luck!" And that the sale would end on Monday, March 18, 2024.

**Figure 13:**



🍀 You're in luck! Shop the St. Paddy's Day Flash Sale before it's too late. Ends Monday! →

28.     This however, was not true, because the sale did not end on Monday, March 18, 2024. *See* https://web.archive.org/web/20240318143957/https://lectricebikes.com/products/xpedition-dual-battery (screen capture of the website as it appeared on Monday, March 18, 2024) and https://web.archive.org/web/20240320160010/https://lectricebikes.com/products/xpedition-dual-battery (screen capture of the website as it appeared on Wednesday, March 20, 2024), Figure 14, reproduced below. See also Figures 2 through 7 (showing same website on various other dates).

**Figure 14:**

29.     Mr. Miranda relied on Defendant's false, misleading, and deceptive representations and warranties about the bundle in deciding to buy the ebike.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the ebike, or would not have paid as much for the ebike and its bundled accessories, had he known Defendant's representations were not true.  Defendant's representations about its ebike and bundled accessories are false and misleading because they induce consumers into believing that they are purchasing Products of a higher value and quality than they actually are.

30.     Had Mr. Miranda known the truth—that the representations he relied upon in making his purchase were false, misleading, and deceptive—he would not have purchased the ebike or would have paid less for the ebike and its bundled accessories.  Mr. Miranda did not receive the benefit of his bargain, because Defendant's ebike and bundled accessories were not of the represented quality and value.  Mr. Miranda understood that his purchase involved a direct transaction between himself and Defendant, because the Product he purchased came with packaging, labeling, and other materials prepared by Defendant, including representations and warranties regarding the advertised claims.

31.     Defendant Lectric ebikes LLC is a limited liability company organized under the laws of Delaware and with a principal place of business located at 2311 W Utopia Road, Phoenix, Arizona.  Defendant manufactures, markets, and advertises and distributes its Products throughout the United States, including California.  Defendant manufactured, marketed, and sold the Products during the relevant Class Period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or business operations concerning the Products were primarily or exclusively carried out by Defendant.

## FACTUAL BACKGROUND

32.     Defendant manufactures, markets, sells, and distributes its Products throughout the United States, including California, through its online e-commerce store.

### *State And Federal Pricing Guidelines*

33.     California law provides clear guidelines as to permissible and unlawful sales tactics:

For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

34.    Additionally, California law expressly prohibits making false or misleading statements of fact "concerning reasons for, existence of, or amounts of price reductions." *See* Cal. Civ. Code § 1770(a)(13).

35.    The Federal Trade Commission ("FTC") provides retailers with additional guidance as to permissible and unlawful sales tactics. *See* 16 C.F.R. § 233.

36.    The FTC provides the following guidance on former price comparisons:

One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

37.    The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith**

**- and, of course, not for the purpose of establishing a fictitious higher price on which a deceptive comparison might be based**." 16 CFR § 233.1(b) (emphasis added).

38.     The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business). This may be done either on a temporary or a permanent basis, but in either case **the advertised higher price must be based upon fact, and not be fictitious or misleading.** Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area - that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

16 C.F.R. § 233.2(a) (emphasis added).

39.     Essentially, federal and state law provides that sales practices should be offered in good-faith and accurately reflect the price at which comparable products are sold in the market.

***Defendant's Deceptive Sales Practices***

40.     Defendant sells its Products through its e-commerce website.

41.     In an effort to increase sales, Defendant engages in a pervasive marketing scheme to artificially inflate the prices of its Products for the sole purpose of marking them at a discounted "sale" price. Defendant knows that consumers typically lack material information about a product and often rely on information from sellers when making purchasing decisions, especially when a products quality or value is difficult to discern.[1]

42.     Therefore, prices can vary widely depending on any number of accessories that a customer selects during the purchasing process. This inherently results in a lack of upfront transparency regarding the cost of Defendant's Products.

---

[1] *Information and Consumer Behavior*, Phillip Nelson, Journal of Political Economy 78, no. 2, p. 311-312 (1970) ("Not only do consumers lack full information about the price of goods, but their information is probably even poorer about the quality variation of products simply because the latter information is more difficult to obtain.").

43.     Rather than make this process more transparent, Defendant uses multiple methods of deceiving consumers into believing that they are receiving a bargain on the ebikes they buy from Defendant.

44.     First, Defendant's ebikes are never sold separately.  Instead, Defendant's ebikes are almost always bundled with various accessories.   These accessories are used to artificially inflate the reference price and make consumers believe they are getting freebies, when in fact, they are not.

**Figure 15:**



45.     Second, Defendant uses strikethroughs on all its ebike product webpages showing the artificially inflated reference prices have been slashed.  Next to the fictitious reference price is a lower purported "sale" price.  Third, Defendant, typically in red text, next to the sale price, tells the consumer he will "Save $XXX."  Fourth, Defendant uses a blue tag symbol next to word "Sale."

**Figure 16:**



46.     Fifth, Defendant often uses the top banner of the webpage to indicate that a sale is fleeting so that the consumer must act quickly.  *See, e.g.*, Figure 13, *supra*.

47.     And sixth, for consumers who sign up for Defendant's email lists, Defendant often reminds them of the fleeting nature of such sales.  *See, e.g.*, Figures 8-10, *supra*.

48.     In short, Defendant's sales tactics are not offered in good faith and are made solely to deceive and induce consumers into purchasing products they otherwise would not have purchased.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

49.    Defendant **never** sells its Product bundles at the advertised strike-through price. Such findings were confirmed through online archives documenting Defendant's pricing and sale history on a daily basis for six months before this complaint was filed.

50.    It is also unclear how Lectric accounts for these "savings." On one hand, before making a purchase, Defendant appears to say that the price of the ebike itself remains the same and that the accessories are free. On the other hand, on receipts it emails to consumers, Defendant spreads out those same savings across the ebike and all the bundled accessories.  For example, when Plaintiff Jonathan Miranda purchased his ebike on St. Patrick's day, the website told him his bike was $1,699 and that he would receive free accessories valued at $405.  *See* Figure 11, *supra*, and https://web.archive.org/web/20240317135530/https://lectricebikes.com/products/xpedition-dual-battery. Yet on the email receipt he received, Lectric stated that the ebike only cost $1,384.47 and that the other bundled accessories all cost money, so that the total bundle cost $1,699.00 before shipping and taxes.  *See* Figure 17, below.

**Figure 17:**



51.    Defendant's advertised false reference prices and advertised false discounts were material misrepresentations and inducements to Plaintiffs' purchases.

52.    Plaintiffs were harmed as a direct and proximate result of Defendant's acts and omissions.

53.    Defendant commits the same unfair and deceptive sales practices for all of its Products.

54.    Plaintiffs and members of the Class are not receiving the bargain or value that Defendant has misled them to believe.

## CLASS ALLEGATIONS

55.    Plaintiffs bring this matter on behalf of themselves and those similarly situated.  As detailed at length in this Complaint, Defendant orchestrated deceptive sales practices.  Defendant's customers were uniformly impacted by and exposed to this misconduct.  Accordingly, this Complaint is situated for class-wide resolution, including injunctive relief.

56.    The Class is defined as all consumers who bought the Products during the applicable statute of limitations period (the "Class Period) in California (the "Class"). Excluded from the Class are governmental entities, Defendant, Defendant's affiliates, parents, subsidiaries, employees, officers, directors, and co-conspirators.  Also excluded is any judicial officer presiding over this matter and the members of their immediate families and judicial staff.

57.    <u>Numerosity:</u> Class Members are so numerous that joinder of all members is impracticable.  Plaintiffs believe that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

58.    <u>Commonality and Predominance:</u> Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

(a)    Whether Defendant is responsible for the conduct alleged herein that was uniformly directed at all consumers who purchased the Products;

(b)  Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

(c)  Whether Defendant made false and/or misleading statements concerning the Products that were likely to deceive a reasonable consumer and/or the public;

(d)  Whether Plaintiffs and the Class are entitled to injunctive relief; and

(e)  Whether Plaintiffs and the Class are entitled to money damages under the same causes of action as the other Class Members.

59.  Typicality: Plaintiffs are members of the Class they seek to represent. Plaintiffs' claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products. Plaintiffs are entitled to relief under the same causes of action as the other Class Members.

60.  Adequacy: Plaintiffs are adequate representatives of the Class and Subclass because their interests do not conflict with the interests of the Class or Subclass members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class and Subclass members will be fairly and adequately protected by Plaintiffs and their counsel.

61.  Superiority: The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment

1    of the liability issues will ensure that all claims and claimants are before this Court for consistent

2    adjudication of the liability issues.

3         62.    Finally, Defendant has acted or refused to act on grounds generally applicable to the

4    entire Class, thereby making it appropriate for this Court to grant final injunctive relief and

5    declaratory relief with respect to the Class as a whole.

6    **<u>COUNT I</u>**
**Violation of Consumers Legal Remedies Act**

7    **("CLRA") Civil Code §§ 1750, *et seq.***

8         63.    Plaintiffs and Class Members reallege and incorporate by reference each allegation

9    set forth above as if fully set forth herein.

10         64.    Plaintiffs bring this claim individually and on behalf of members of the Class

11    against Defendant.

12         65.    This cause of action is brought pursuant to California's Consumers Legal Remedies

13    Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

14         66.    Plaintiffs and members of the Class are consumers who purchased Defendant's

15    Products for personal, family, or household purposes.  Accordingly, Plaintiffs and members of the

16    Class are "consumers," as the term is defined by Cal. Civ. Code § 1761(d).

17         67.    At all relevant times, Defendant's Products constituted "goods," as that term is

18    defined in Cal. Civ. Code § 1761 (a).

19         68.    At all relevant times, Defendant was a "person," as that term is defined in Cal. Civ.

20    Code § 1761(e).

21         69.    At all relevant times, Plaintiffs' purchases of Defendant's Products, and the

22    purchases of other Class members, constituted "transactions," as that term is defined in Cal. Civ.

23    Code § 1761 (e).

24         70.    The conduct alleged in this Complaint constitutes unfair methods of competition

25    and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was

26    undertaken by Defendant in transactions intended to result in, and which did result in, the sale of

27    goods to consumers.

28

71.     The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Defendant's Products to Plaintiffs and the Class.  Defendant's practices, acts, policies, and course of conduct violated the CLRA § 1750 *et seq.*, as described above.

72.     Defendant advertised goods or services with intent not to sell them as advertised in violation of California Civil Code § 1770(a)(9).

73.     Defendant made false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions, in violation of California Civil Code § 1770(a)(13).

74.     Defendant violated California Civil Code §§ 1770(a)(9) and (a)(13) by representing that its Products were "on sale" representing that consumers were receiving a "discount" and would "save $X," and displaying a strikethrough reference price.

75.     Plaintiffs and members of the Class suffered injuries caused by Defendant's misrepresentations because (a) Plaintiffs and members of the Class would not have purchased the Products on the same terms if they had known the true facts; (b) Plaintiffs and members of the Class paid a price premium due to the mislabeling of Defendant's Products; and (c) Defendant's Products did not have the level of quality or value as promised.

76.     Wherefore, Plaintiffs seek injunctive relief for this violation of the CLRA.

**<u>COUNT II</u>**
**Violation of False Advertising Law**
**("FAL") Business & Professions Code §§ 17500, *et seq.***

77.     Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

78.     Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

79.     California's FAL, (Bus. & Prof. Code §§ 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or

performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

80.    California's FAL further provides that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price … within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." *See* Cal. Bus. & Prof. Code § 17501.

81.    Defendant violated California's FAL by representing that its Products were "on sale" or "% off," representing that consumers were receiving a "discount" and would "save $X," and displaying a strikethrough reference price.  Defendant never offered the Products at the advertised strike-through price.  Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

82.    Defendant's actions in violation of § 17500 were false and misleading such that the general public was likely to be deceived.

83.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiffs and members of the Class have suffered injury and actual out-of-pocket losses because: (a) Plaintiffs and members of the Class would not have purchased the Products if they had known the true facts regarding the value and prevailing market price of the Products; (b) Plaintiffs and members of the Class paid a price premium due to the misrepresentations about the Products; and (c) the Products did not have the promised quality or value.

84.    Plaintiffs bring this action pursuant to § 17535 for injunctive relief to enjoin the practices described herein and to require Defendant to issue corrective and disclosures to consumers.  Plaintiffs and members of the Class are therefore entitled to: (a) an order requiring Defendant to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendant as a result of its deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiffs' attorneys' fees and costs.

## COUNT III
### Violation of Unfair Competition Law
### Business & Professions Code §§ 17200, *et seq.*

85.    Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

86.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

87.    Defendant is subject to the UCL, Bus. & Prof. Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."  The UCL also provides for injunctive relief and restitution for violations.

88.    "By proscribing any unlawful business practice, § 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

89.    Virtually any law or regulation—federal or state, statutory, or common law—can serve as a predicate for a UCL "unlawful" violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

90.    Defendant has violated the UCL's "unlawful prong" as a result of its violations of the CLRA, FAL, and federal regulations as described herein.

91.    Throughout the Class Period, Defendant committed acts of unfair competition, as defined by § 17200, by representing that its Products were "on sale" or "% off," representing that consumers were receiving a "discount" and would "save $X," and displaying a strikethrough reference price.  Defendant never sold its Products at the advertised strikethrough price.  Such a deceptive marketing practice misled consumers by creating a false impression that the Products were of a higher value and worth more than their actual worth.

92.    As detailed above, the CLRA prohibits a business from "[a]dvertising goods or services with intent to not sell them as advertised."  Cal. Civ. Code § 1770(a)(9).

93.    Further, the CLRA prohibits a business from "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  Cal. Civ. Code § 1770(a)(13).

94.    California law also expressly prohibits false reference price schemes.  Specifically, the FAL provides:

> For the purpose of this article the worth or value of any thing advertised is the prevailing market price, wholesale if the offer is at wholesale, retail if the offer is at retail, at the time of publication of such advertisement in the locality wherein the advertisement is published.
>
> No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Bus. & Prof. Code § 17501.

95.    Federal regulations also provide:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  **If, on the other hand, the former price being advertised is not bona fide but fictitious - for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction - the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.**

16 C.F.R. § 233.1(a) (emphasis added).

96.    The FTC further provides that "[t]he advertiser should be especially careful […] that the price is one at which the product was openly and actively offered for sale, for a reasonably substantial period of time, in the recent, regular course of his business, **honestly and in good faith**

1    **- and, of course, not for the purpose of establishing a fictitious higher price on which a**

2    **deceptive comparison might be based**." 16 C.F.R. § 233.1(b) (emphasis added).

3          97.    The FTC also provides retailers with guidance as to retail price comparison:

> Another commonly used form of bargain advertising is to offer goods
> at prices lower than those being charged by others for the same
> merchandise in the advertiser's trade area (the area in which he does
> business). This may be done either on a temporary or a permanent
> basis, but in either case **the advertised higher price must be based**
> **upon fact, and not be fictitious or misleading.** Whenever an
> advertiser represents that he is selling below the prices being charged
> in his area for a particular article, he should be reasonably certain
> that the higher price he advertises does not appreciably exceed the
> price at which substantial sales of the article are being made in the
> area - that is, a sufficient number of sales so that a consumer would
> consider a reduction from the price to represent a genuine bargain or
> saving.

12    16 C.F.R. § 233.2(a) (emphasis added).

13          98.    As described herein, the alleged acts and practices resulted in violations of federal

14    and state law.

15          99.    Defendant's misrepresentations and other conduct, described herein, violated the

16    "unfair prong" of the UCL because the conduct is substantially injuries to consumers, offends

17    public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the

18    conduct outweighs any alleged benefits. Defendant's conduct is unfair in that the harm to Plaintiffs

19    and members of the Class arising from Defendant's conduct outweighs the utility, if any, of those

20    practices.

21         100.    Defendant's practices as described herein are of no benefit to consumers, who are

22    tricked into believing that the Products are of a higher grade, quality, worth, and/or value than they

23    actually are. Defendant's practice of injecting misinformation into the marketplace about the value

24    of its Products is unethical and unscrupulous, especially because consumers trust companies like

25    Defendant to provide accurate information about their Products. Taking advantage of that trust,

26    Defendant misrepresents the value of its Products to increase its sales. Consumers reasonably

27    believe that Defendant is an authority on the value of e-bikes and their corresponding bundles and

28

therefore reasonably believe Defendant's representations that its Products are of a higher grade, quality, worth, and/or value than they actually are.

101.    Defendant's conduct described herein violated the "fraudulent" prong of the UCL by representing that the Products were of a higher grade, quality, worth, and/or value, when in fact they were not.

102.    Plaintiffs and members of the Class are not sophisticated experts with independent knowledge of the value of e-bikes and their accessories, and they acted reasonably when they purchased the Products based on their belief that Defendant's representations were true.

103.    Defendant knew or should have known, through the exercise of reasonable care, that its representations about the Products were untrue and misleading.

104.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Thus, Plaintiffs and members of the Class are entitled to preliminary and injunctive relief.

**COUNT IV**
**Fraud**

105.    Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

106.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

107.    As discussed above, Defendant's representations about (1) its reference prices, (2) the existence of sales and savings, and (3) the fleeting nature of these sales and savings were all false and misleading.

108.    As discussed above, Defendant failed to disclose material facts about its sales practices, including that its "sale" prices were the normal prices at which the Products were typically sold, that its strikethrough prices and purported "discounts" were fictitious, and that these deceptive sales practices operated solely for the purpose of inducing consumers to make purchases they otherwise would not have made.

109.    These false and misleading representations omissions made by Defendant, as described above, upon which Plaintiffs and members of the Class reasonably and justifiably relied,

were intended to and actually did induce Plaintiffs and members of the Class to purchase the Products.

110.    The fraudulent actions of Defendant caused damage to Plaintiffs and members of the Class, who are entitled to damages and other legal and equitable relief as a result.

**COUNT V**
**Unjust Enrichment**

111.    Plaintiffs and Class Members reallege and incorporate by reference each allegation set forth above as if fully set forth herein.

112.    Plaintiffs bring this claim individually and on behalf of the members of the Class against Defendant.

113.    Plaintiffs and members of the Class conferred a benefit on Defendant by purchasing the Products and by paying a price premium for them.

114.    Defendant has knowledge of such benefits.

115.    Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Products, which retention under these circumstances is unjust and inequitable because it misrepresents that its Products are "on sale" or "% off," representing that consumers were receiving a "discount" and would "save $X," and displaying a strikethrough reference price.  These misrepresentations caused injuries to Plaintiffs and Class Members because they would not have purchased the Products if the true facts regarding the value of the Products were known.

116.    Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class Members for their unjust enrichment, as ordered by the Court.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the members of the Class, pray for judgment as follows:

(a)  Declaring this action to be a proper class action and certifying Plaintiffs as the representative of the Class, and Plaintiffs' attorneys as Class Counsel to represent the Class Members;

(b)  An order declaring Defendant's conduct violates the statutes referenced herein;

(c)  Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its sales practices and to comply with consumer protection statutes;

(d)  Awarding monetary damages, including treble damages;

(e)  Awarding punitive damages;

(f)  Awarding Plaintiffs and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiffs' attorneys and experts, and reimbursement of Plaintiffs' expenses; and

(g)  Granting such other and further relief as the Court may deem just and proper.

## <u>JURY DEMAND</u>

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: September 12, 2024              Respectfully submitted,

                                       **BURSOR & FISHER, P.A.**

                                       By:     */s/ Stefan Bogdanovich*
                                               Stefan Bogdanovich

                                       L. Timothy Fisher (State Bar No. 191626)
                                       Stefan Bogdanovich (State Bar No. 324525)
                                       1990 North California Blvd., 9th Floor
                                       Walnut Creek, CA 94596
                                       Telephone: (925) 300-4455
                                       Facsimile:  (925) 407-2700
                                       E-mail: ltfisher@bursor.com
                                                sbogdanovich@bursor.com

                                       *Attorneys for Plaintiffs*